IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MARSHA HEATH, SCOTT ROGERS, ROBERT KEMERY and SEAN LAWRENCE, *on behalf of themselves and all others similarly situated,* : : : : : | |
| Plaintiffs, : : | |
| v.  : : | Civil Action No. ____3:18cv720_____ |
| TRANS UNION, LLC, : : | |
| Defendant. : : | |

## CLASS ACTION COMPLAINT

The Plaintiffs, Marsha Heath, Scott Rogers, Robert Kemery, and Sean Lawrence ("Plaintiffs"), by counsel, on behalf of themselves and all similarly situated individuals, allege as follows:

### PRELIMINARY STATEMENT

1. This is a consumer class action brought for willful violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), against Defendant Trans Union, LLC ("Trans Union").

2. The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, *accuracy*, relevancy, and proper utilization of such information." 15 U.S.C. § 1681 (emphasis added). In furtherance of its underlying purposes, the FCRA sets out requirements and obligations that a consumer report is published and requires that the report be as accurate as possible. 15 U.S.C. § 1681e(b).

3. Plaintiffs allege a class claim under 15 U.S.C. § 1681e(b) because Trans Union allowed debt collectors, such as Diaz & Associates, to report that Virginia consumers had an outstanding balance on Western Sky or Cashcall account, even those all of those accounts had been forgiven as a result of a class action settlement.

4. Despite that fact that it knew, or should have known, that these Western Sky or Cashcall debts were invalid, Trans Union did not have any meaningful procedures in place to ensure that this inaccurate information did not appear on the Plaintiffs' and putative class members' credit reports.

## JURISDICTION

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

6. Venue is proper in this Court under 28 U.S.C. § 1391(b) as Plaintiff Heath is a resident of the Richmond Division and Trans Union regularly conducts business in this Division.

## PARTIES

9. Each Plaintiff is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

10. Defendant Trans Union, LLC ("Trans Union") is a foreign corporation doing business in Virginia. At all times relevant to this complaint, it was a "consumer reporting agency" as defined by the FCRA at 15.U.S.C. § 1681a(f).

## FACTS

11. On or around May 8, 2013, Plaintiff Heath received a usurious payday loan from a lender called Western Sky Financial, LLC ("Western Sky"), which transferred her loan to WS Funding, LLC, which then named its corporate parent, CashCall, Inc., as the servicing agent for

the loan (Plaintiff Heath's "CashCall loan"). Plaintiff Heath's CashCall loan was void *ab initio* pursuant to Virginia's usury laws.

12. On or around July 2, 2013, Plaintiff Rogers received a usurious payday loan from Western Sky, which transferred his loan to WS Funding, LLC, which then named its corporate parent, CashCall, Inc., as the servicing agent for the loan (Plaintiff Rogers' "CashCall loan"). Plaintiff Rogers' CashCall loan was void *ab initio* pursuant to Virginia's usury laws.

13. On or around July 3, 2013, Plaintiff Kemery received a usurious payday loan from Western Sky, which transferred his loan to WS Funding, LLC, which then named its corporate parent, CashCall, Inc., as the servicing agent for the loan (Plaintiff Kemery's "CashCall loan"). Plaintiff Kemery's CashCall loan was void *ab initio* pursuant to Virginia's usury laws.

14. On or around July 9, 2013, Plaintiff Lawrence received a usurious payday loan from Western Sky, which transferred his loan to WS Funding, LLC, which then named its corporate parent, CashCall, Inc., as the servicing agent for the loan (Plaintiff Lawrence's "CashCall loan"). Plaintiff Lawrence's CashCall loan was void *ab initio* pursuant to Virginia's usury laws.

### *Virginia's Policy Regarding Usury and the Virginia Class Action Lawsuit Challenging the CashCall Loans*

15. In accordance with Virginia's longstanding public policy against usurious loans, a person may not charge an annual percentage rate ("APR") exceeding 12% without first obtaining a consumer finance license from the Commonwealth. Va. Code §§ 6.2-1501(A), 6.2-303(A).

16. Under Va. Code § 6.2-1541(A), any loan contract is void if the making or collection of the loan contract violates Virginia's 12% interest cap and no exception to the prohibition applies.

17. Not only does Virginia law allow for enforcement against lenders, but it also authorizes consumers who paid on the usurious loan to recover from debt collectors the total

amount of the interest paid, additional compensation for any interest collected in the last two years, and attorney's fees and costs. Va. Code Ann. § 6.2-305.

18. Plaintiffs' CashCall loans and the practices of the enterprise that made, serviced, and collected on the loans made to Virginia consumers were challenged by a putative class action brought in this District. *See Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 669 (4th Cir. 2016).

19. In *Hayes*, no one "seriously disputed that [the CashCall] payday loans violated a host of state and federal lending laws." *Id.* Instead, the *Hayes* defendants sought to avoid liability for their multiple state and federal violations by claiming that their arbitration agreement barred suit in federal court. *See id.* at 670.

20. The United States Court of Appeals for the Fourth Circuit rejected the *Hayes* defendants' attempt to enforce the arbitration agreement associated with the CashCall loans, holding that the agreement's choice of law provision—which was really a waiver of all federal law—was "simply unenforceable." *Id.* at 673-74.

21. The Fourth Circuit declined to sever the choice of law provision from the remainder of the arbitration agreement noting that "one of the animating purposes of the arbitration agreement was to ensure that Western Sky and its allies could engage in lending and collection practices free from the strictures of any federal law." *Id.* at 676. The court observed that the loan agreements "starkly proclaim[ed]" that no federal law applied to the loans. *Id.* at 676. "The brazen nature of such statements," the Fourth Circuit noted, "confirmed that Western Sky's arbitration agreement [was] little more than an attempt 'to achieve through arbitration what Congress has expressly forbidden.'" *Id.* (quoting *Graham Oil Co. v. ARCO Prod. Co.*, 43 F.3d 1244, 1249 (9th Cir. 1994), *as amended* (Mar. 13, 1995).

22. Following, the Fourth Circuit's remand of the case back to this District, the parties in *Hayes* reached a settlement agreement in which the defendants agreed to pay monetary consideration to the settlement class and to adjust to zero all the outstanding debts that were in the defendants' possession.[1] The Court issued a preliminary order approving the settlement on January 30, 2017, and entered a final approval order on June 6, 2017.[2]

23. Plaintiffs were members of the settlement class in *Hayes*.

### *Extensive Litigation Surrounding the Void Loans Issued by CashCall*

24. In addition to the *Hayes* litigation, the usurious loans issued by CashCall have been challenged in numerous cases brought all over the country.

25. Attorneys general in multiple states have entered into settlement agreements with the entities associated with the CashCall loans providing for monetary relief to consumers and, in some cases, for the assessments of penalties and fees.

26. For example, the Attorney General for the State of Georgia negotiated a settlement agreement providing over $40 million in monetary relief to Georgia consumers who were the victims of the usurious CashCall loans following a Georgia Supreme Court ruling holding that the CashCall loans violated Georgia's usury laws. The Georgia Attorney General noted that the settlement sent a strong message that Georgia would not tolerate "unscrupulous lenders who prey on consumers by charging illegal interest and fees."[3]

---

[1] Stipulation and Agreement of Settlement, 3:14-cv-00258-JAG, Doc. 193 at 9-12 (Jan. 20, 2017), https://secure.dahladmin.com/VACASH/content/documents/PreliminaryApprovalOrder.pdf.

[2] Preliminary Approval Order, 3:14-cv-00258-JAG, Doc 193 (Jan. 30, 2017), https://secure.dahladmin.com/VACASH/content/documents/PreliminaryApprovalOrder.pdf.

[3] *See* Press Release, Office of Att'y Gen., Ga., Attorney General Chris Carr Announces $40 Million Plus Settlement with Online Payday Lender (Feb. 8, 2017), https://law.georgia.gov/press-releases/2017-02-08/attorney-general-

27.     Settlements have been reached in numerous other states, including in Florida,[4] Minnesota,[5] North Carolina,[6] Washington,[7] Michigan,[8] Nebraska,[9] Indiana,[10] Oklahoma,[11] and Colorado.[12]

### *Trans Union's Credit Reporting of Void, Usurious CashCall Debts*

28.     On or around August 25, 2018, Plaintiff Heath accessed her Trans Union credit report and noticed that a debt collector, Diaz & Associates, was reporting that she owed an outstanding balance on a Western Sky/Cashcall debt.

---

chris-carr-announces-40-million-plus-settlement-online ($23.5 million in compensation, $17 million in loan forgiveness, $1 million civil penalty, and $500,00 attorney's fees and costs).

[4] See News Release, Att'Gen. Pam Bondi, Fl., Attorney General Bondi and OFR Reach Multimillion Dollar Settlements with Online Lender (Jan. 12, 2017), http://myfloridalegal.com/__852562220065EE67.nsf/0/2F836464563D0EB5852580A600709370?Open&Highlight=0,western,sky ($11 million in compensation, $15 million in loan forgiveness, $500,000 civil penalty, $500,000 administrative fine, and $250,000 for costs).

[5] https://mn.gov/commerce/media/news/?id=17-253055 (last visited Oct. 12, 2018).

[6] https://www.nccob.org/Public/docs/News/Press%20Releases/Western_Sky_2016.pdf (last visited Oct. 12, 2018).

[7] Press Release, Wash. Dep't of Fin. Inst., Washington DFI Enters Settlement Agreement With CashCall and Western Sky Financial Over Unlicensed Internet Predatory Lending Activities (Oct. 21, 2015), http://dfi.wa.gov/news/press/washington-dfi-enters-settlement-agreement-cashcall-and-western-sky-financial-over ($1.9 million in refund payments).

[8] https://www.michigan.gov/ag/0,4534,7-359-82916_81983_47203-365499--,00.html (last visited Oct. 12, 2018).

[9] *Attorney General Doug Peterson and Director of the Department of Banking and Finance Mark Quandahl Announce Settlement with Western Sky Financial, CashCall, et al. for Predatory Internet Loans*, Neb. Att'y Gen. (May 5, 2016), https://protectthegoodlife.nebraska.gov/news/attorney-general-and-director-banking-announce-settlement-western-sky ($950,000 restitution fund, $557,066 in loan forgiveness, and $150,000 paid to Nebraska).

[10] https://www.wowo.com/indiana-reaches-settlement-high-cost-loan-companies/ (last visited Oct. 12, 2018).

[11] Press Release, Okla. Dep't of Consumer Credit, Oklahoma Department of Consumer Credit Enters Into Agreed Order with CashCall, Inc.(Feb. 23, 2017), https://www.ok.gov/okdocc/documents/2017-02-23%20DOCC%20Press%20Release.pdf.

12 https://coag.gov/press-room/press-releases/01-22-14 (last visited Oct. 12, 2018).

29. This information was incorrect, because this debt was forgiven in full as part of the *Hayes* settlement.

30. Upon information and belief, Defendant Trans Union reported this inaccurate information about Plaintiff Heath in a consumer report provided to one or more third parties.

31. Similarly, on or around November 1, 2017, Plaintiff Lawrence accessed his Trans Union credit report and noticed that a debt collector, Diaz & Associates, was reporting that he owed an outstanding balance on a Western Sky/Cashcall debt.

32. This information was incorrect, because this debt was forgiven in full as part of the *Hayes* settlement.

33. Upon information and belief, Defendant Trans Union reported this inaccurate information about Plaintiff Lawrence in a consumer report provided to one or more third parties.

34. On or around April 24, 2018, Plaintiff Kemery accessed his Trans Union credit report and noticed that a debt collector, Diaz & Associates, was reporting that he owed an outstanding balance on a Western Sky/Cashcall debt.

35. Again, the information Trans Union reported was incorrect because this debt was forgiven in full as part of the *Hayes* settlement.

36. Upon information and belief, Defendant Trans Union reported this inaccurate information about Plaintiff Kemery in a consumer report provided to one or more third parties.

37. On or around July 9, 2018, Plaintiff Rogers accessed his Trans Union credit report and noticed that a debt collector, Diaz & Associates, was reporting that he owed an outstanding balance on a Western Sky/Cashcall debt.

38. Again, the information Trans Union reported was incorrect because this debt was forgiven in full as part of the *Hayes* settlement.

39. Upon information and belief, Defendant Trans Union reported this inaccurate information about Plaintiff Rogers in a consumer report provided to one or more third parties.

40. Further, the Diaz & Associates and other debt collectors' tradelines clearly indicate that the name of the original creditor is either Western Sky or CashCall.

41. Each of the Plaintiffs' tradelines clearly state the original creditor was Western Sky.

42. Upon information and belief, Defendant Trans Union knew or should have known that these Western Sky/CashCall debts were invalid under Virginia law and that they had been the subject of the *Hayes* settlement, which provided that the balance of the loans was zero.

43. Despite this knowledge, Trans Union did not have any procedures in place to ensure that this inaccurate information was not reported on the Plaintiffs' and putative class members' reports.

44. Instead, Trans Union waited for consumers to dispute the inaccurate information themselves before it removed the CashCall/Western Sky debts from consumer reports.

45. As a result of Trans Union's conduct, Plaintiffs and the putative class members suffered concrete injuries, including reduced credit scores, credit denials, and the dissemination of inaccurate information about them.

46. At all times relevant hereto, Trans Union's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, Trans Union's conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, by failing to implement any procedure to identify and correct these errors prior to furnishing reports.

**COUNT ONE:**
**Violation of 15 U.S.C. § 1681e(b)**

47.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

48.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were class members in *Hayes v. Delbert Servs. Corp.*, 3:14-cv-258 (E.D. Va.) or any other lawsuit or attorney general action in which their Cashcall debt was forgiven; and (b) within two years preceding the filing date of this complaint (c) Trans Union provided a report regarding the class member to a third party; (d.) which contained a tradeline indicating that the class member had a Western Sky or Cashcall debt with an outstanding balance. Excluded from the class definition are any employees, officers, directors of Trans Union, any attorney appearing in this case, and any judge assigned to hear this action.

49.     Upon information and belief, Plaintiffs' counsel estimates that the class is so numerous that joinder of all members is impractical. The class members' name and addresses are identifiable through Trans Union's business records and other documents in Trans Union's possession, and the class members may be notified of the pendency of this action by published and/or mailed notice.

50.     There are questions of law and fact common to the class, which predominate over any issues involving only individual class members. For example, and without limitation: (a.) whether Trans Union's procedures regarding the reporting of Western Sky and CashCall debts constituted a reasonable procedure designed to ensure that the credit reports it published regarding class members were as accurate as possible; (b.) whether Trans Union's conduct constituted a violation of the FCRA; and (c.) whether Trans Union's conduct was willful.

51.     Plaintiffs' claims are typical of those of the class members. All are based on the same facts and legal theories and Trans Union's uniform policies and procedures. The violation

alleged is the same and the class claim will rise and fall entirely based upon whether or not Plaintiffs' claim rises or falls.

52. The Plaintiffs will fairly and adequately protect the interests of the class. The Plaintiffs have retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. The Plaintiffs are aware of their responsibilities to the putative classes and have accepted such responsibilities.

53. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a. As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers affected by Trans Union's FCRA violation would likely be unaware of their rights under the law, or who they could find to represent them in federal litigation. Additionally, individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law as for every similarly situated consumer.

54. Trans Union violated § 1681e(b) of the FCRA by: failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs and the putative class members and the Western Sky/CashCall debts that it reported about them.

55. Each Plaintiff and putative class member suffered real and actual harm and injury.

56. For example, the rights at issue were determined by Congress to be important measures of Trans Union's process to ensure continued accuracy and completeness in its files and reports.

57. In each instance, each class member's credit report was materially inaccurate and reported a derogatory tradeline that Trans Union was legally obligated to correct.

58. Trans Union's conduct was willful, rendering Trans Union liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering Trans Union liable under 15 U.S.C. § 1681o.

59. As a result of these FCRA violations, Trans Union is liable to the Plaintiffs and to each putative class member for statutory damages from $100.00 to $1,000.00, punitive damages, as well as for their attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs Marsha Heath, Scott Rogers, Robert Kemery and Sean Lawrence request that the Court enter judgment on behalf of themselves and the class they seek to represent against Defendant for: (1) certification for this matter to proceed as a class action under Rule 23; (2) statutory and punitive damages as pled above; (3) for attorneys' litigation expenses and costs of suit; and (4) such other or further relief as the Court deems proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,
**PLAINTIFFS**

By: _____*/s/ Kristi C. Kelly*_____
Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
Casey Nash, Esq., VSB #84261
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com
Email: casey@kellyandcrandall.com

*Counsel for Plaintiffs*